SOUTH MCALESTER ELECTRIC LIGHT AND POWER CO. vs EDDY.

Opinion delivered October 26, 1899.

*Building Contract—Improper Construction—Instruction as to Violence of Wind.*

Plaintiff sued for amount due under contract for erecting a

building. Defendant protested payment on the ground that the wall was not properly built, and that by reason thereof the wall had blown down  Plaintiff claimed that the wind which blew the wall down would have blown down any wall, no matter how constructed. *Held*, It was not incumbent upon plaintiff to show there were other walls blown down in the vicinity of the building in question.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by John Eddy and another against the South McAlester Electric Light & Power Company to recover a balance alleged to be due on their contract to erect a building for defendant. Judgment for plaintiffs. Defendant appeals. Affirmed.

During the spring of 1897 the appellees (plaintiffs below) built for appellant (defendant below), under a written contract, a stone building in the town of South McAlester, designed for an electric light plant. Appellant paid a part of the stipulated price for the erection of the building; but, because of certain alleged defects discovered after the building was completed, the front wall of the building fell down, or, as alleged by appellees, blew down. Appellant contends that, if the wall had been properly constructed, it would not have been blown down by a wind no more severe than the evidence shows occurred the night the wall fell or was blown down. This is disputed by appellees. There was a trial by jury, and a verdict for appellees. Appellant in due time filed its motion for a new trial, which was overruled. Thereafter, and within the time allowed by the court below, appellant filed its bill of exceptions, and brings the cause to this court.

*Browne, Craig & Kellogg,* for appellant.

*J. S. Arnote,* for appellees.

SPRINGER, C. J.   The appellant relies upon one assignment of error only, namely, that the court erred in overruling appellant's motion for a new trial.   In the motion for a new trial eight grounds for setting aside the verdict were set forth, but appellant, in its brief, insists upon one specification of error only, namely, that the verdict is not sustained by sufficient evidence and is contrary to law. Appellant, in its brief, insists that the evidence was conclusive that, if the wall had been properly constructed, it should have lasted at least 30 years, and that the wall in question should have stood for that length of time in the absence of some external force to destroy it, and hence it follows that either the wall was improperly built, or some external force destroyed it.   The appellees insist that the wall was properly constructed, and allege that a severe windstorm which prevailed at the time the wall fell was the cause of its falling.

Appellant, in its brief, cites the following instruction, which was given to the jury at its request, and to the giving of which the appellees excepted: "You are instructed that it is not sufficient for plaintiffs to show that the night that the wall fell down there was a strong wind blowing, and that said wall blew down.   But plaintiffs must show that there was such a wind blowing as would blow down other properly constructed stone houses, such as this; and, although the wind might have been the direct cause of said wall blowing down or falling down, yet if you believe from the evidence that the wind upon that night blew down said wall only because of its improper construction, and its defective, unsafe condition at the time of the storm, then you must find for the defendant, as to the fair and reasonable

cost of rebuilding the said wall. And the court instructs you that the mere fact that chimneys may have blown off, or some small, poorly-built buildings or outhouses may have blown over, does not necessarily show that there was such a wind that would blow down a properly constructed stone building, or any part thereof.'' In commenting upon this instruction, appellant, in its brief, states: ''Therefore, to recover, it devolved upon appellees to show that there was such a wind blowing as would blow down a properly constructed stone building, such as the one in question.'' And, further commenting upon this instruction, appellant states in its brief: ''Under the law in this case, it was necessary for appellees' witness to testify that other buildings of like character were blown down by this alleged wind, before the jury could properly return a verdict for appellees. The testimony of other witnesses is that there were no buildings of like character injured by the wind that night. This one stands alone. It was destroyed. All others came through the wind unscathed.'' The construction placed upon the instruction of the court above set forth by appellant is not sustained by the text. The court did not say or mean to say that it devolved upon the appellees to show that there was such a wind blowing that other buildings of like character were blown down by this alleged windstorm. The language of the instruction is that ''plaintiffs must show that there was such a wind blowing as would blow down other properly constructed stone houses, such as this.'' This instruction was prepared by the appellant's attorney, and at their request was given to the jury. The meaning of the instruction is not that other buildings were actually blown down, but that the wind was such as it might have blown down the building in question. It was not incumbent upon the plaintiffs below (the appellees in this court) to show that there were stone walls in the vicinity of the buildings in question actually blown down by the storm that prevailed at the time

the wall fell.    Appellant insists that the only testimony in the record was that of one of the witnesses who testified that the wind blew some houses down, but that they were only box houses, but that there were no frame or stone buildings blown down.    The record does not sustain this contention of appellant.    There was other evidence in the record in reference to the severity of the storm.    The same witness testified "that he would call it a young cyclone; that it came from the southwest."    He said that he heard that it blew several houses down.    He was also asked by the attorney, Mr. Arnote, whether he saw any chimneys blown down.    His answer was as follows:    "Yes sir; I believe I saw the chimney on Judge Clayton's house the next day, and I put a chimney on your house the next day that it was blown down."    G. A. Place, a witness called by the appellant, testified that the wall which was blown down was seven or eight feet above the roof on the southwest corner of the building, and that, in case of a heavy wind coming from the southwest, it was very likely that, by reason of exposing a great surface for the wind to catch against, it would blow the top over, and that this would very likely be the case if it had been a good wall; that a strong wind, in his opinion, would have blown the wall clear over.    The principal issue in the case was as to whether the wall had been properly constructed,—whether it had been constructed in accordance with the contract, which provided, among other things.    "All walls above foundations to be eighteen-inch, double-faced walls, well bonded, with hammered dressed face outside."    The attention of witnesses on both sides was directed to the question as to whether the wall was properly bonded.    Upon this point the evidence was conflicting.    Witnesses for the plaintiffs below testified that in their opinion the wall was properly bonded, while the witnesses for the defendant insisted that it was not properly bonded.    There was also evidence tending to show that the

wall was weakened in its construction by reason of certain requirements exacted by the defendant company of the builders. It was asserted, and not denied, that all of the walls were built before the front wall (which fell) was constructed, and that this was done at the instance of the defendant, which required the front wall to be left until the last, in order that the machinery could be put into the building before the front wall was constructed; the doors not being sufficiently large to admit of this. The plaintiffs insist that the wall was not made as strong as it otherwise would have been, on account of this fact. There was also testimony going to show that the transoms over the windows tended to weaken the walls, and that these were constructed under the direction of the defendant company.

Appellees state in their brief that the trial judge, in overruling the motion for a new trial, made the following statement: "That the fact of there being weak points in the wall, for which the appellees were not responsible,— the south end extending so high above the roof, exposing a large surface to the free force of storms,—and the fact that a storm will strike at one point with more telling force than at others, and that there was a severe storm at the time the wall was blown down, is ample proof to sustain the verdict." This statement of the trial judge is not found in the record, but, whether made by the trial judge at the time or not, it states forcibly the conclusion to which this court has arrived after a very careful examination of all the evidence in the case. The issues were fairly submitted to the jury, and there is ample proof to sustain the verdict. The judgment of the court below is therefore affirmed.

THOMAS and TOWNSEND, JJ., concur.